**LAW OFFICE OF JARED S. ZAFRAN, LLC**
BY:   Jared Zafran, Esquire
         A.J. Thomson, Esquire
Attorney I.D. Nos. 208269/87844
1500 Walnut Street, Suite 500
Philadelphia, PA 19102
215-587-0038
ajthomson@zafranlaw.com

*Filed and Attested by the Office of Judicial Records 01 JUN 2022 02:38 pm S. RICE*

Attorneys for Plaintiff

---

| | |
|---|---|
| Z.M.,<br>c/o Law Offices of Jared S. Zafran<br>1500 Walnut Street, Suite 500<br>Philadelphia, PA 19102<br>                      Plaintiff | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW<br><br>MAY TERM 2022 |
|                  vs. | |
| ARCHDIOCESE OF NEW YORK,<br>1011 1st Avenue<br>New York, NY 10022<br>                      Defendant | JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT – 2O – OTHER PERSONAL INJURY

**NOTICE**

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.**

**Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market Street
Philadelphia, PA 19107
(215) 238-6333**

**AVISO**

Le han demandado a usted en la corte. Si usted guiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte pued decidir a favor del demandante y require qu usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derchos importantes para usted.

**Illeve esta demanda a un abogado immediatament. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio, vaya en persona o llame por teléfono a la oficina cuya dirección se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.**
**Asociación De Licenciados De Filadelfia
Servicio de Referencia E Información Legal
1101 Market Street
Philadelphia, PA 19107
(215) 238-6333**

Case ID: 220501170

# COMPLAINT

## INTRODUCTORY STATEMENT

1. This action seeks civil justice from the Archdiocese of New York and James Garisto ("Garisto") for the harm suffered by a former altar boy, Z.M., who was repeatedly abused by Garisto, a priest in the employ and service of the Archdiocese of New York.

2. Garisto was a serial predator of boys in multiple states and trafficked his victims between the state of New York and properties that he owned in Philadelphia, Pennsylvania and Harrisburg, Pennsylvania.

3. The Archdiocese of New York had knowledge or should have had knowledge of Garisto's serial predation but did nothing to prevent Garisto from abusing boys from at least as far back as the 1990s up to and through the abuse suffered by Z.M. from 2006 through 2010.

4. The Archdiocese of New York and its employees knew that Garisto frequently visited his properties in Pennsylvania and knew that he took boys, including Z.M., on these trips.

5. Archdiocese of New York employees organized travel accommodations, booked restaurant reservations, and arranged other aspects of travel for Garisto's trips with Z.M. in Pennsylvania, Massachusetts, and New York City.

6. Numerous victims of Garisto and the Archdiocese of New York have come forward in recent months seeking justice for the evil acts perpetrated on them by a man who outwardly professed to be a servant of God, but in reality, was a man who used his position of would-be moral authority in the lives of his victims to harm them for his own personal gratification. These acts were enabled and encouraged by the staff members of multiple parishes who knew of Garisto's activities with boys and either facilitated them or chose to keep quiet about them rather than report them to the proper authorities.

Case ID: 220501170

## PARTIES & JURISDICTION

7. Plaintiff Z.M., born in January 1991, is an adult resident and citizen of the state of New Jersey, who can be contacted through his attorneys, The Law Office of Jared S. Zafran, LLC., 1500 Walnut Street, Suite 500 Philadelphia, PA 19102. Z.M. is a pseudonym for the Plaintiff's name as the Plaintiff proceeds by anonymous initials due to the nature of this civil suit.

8. Defendant, Archdiocese of New York, was and is a Roman Catholic Organization and non-profit religious corporation conducting business in the state of Pennsylvania with a principal place of business at 1011 1st Avenue New York, NY 10022.

9. To the extent that the Archdiocese of New York was a different entity, corporation, or organization during the period of time in which Garisto sexually abused Z.M., such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as the Archdiocese of New York.

10. At all times material, James Garisto was employed as a Roman Catholic Priest by the Archdiocese of New York.

11. Z.M. brings his lawsuit against the parties in this jurisdiction, as acts of sexual predation occurred at locations in Philadelphia, Pennsylvania and Harrisburg, Pennsylvania, though Garisto also abused Z.M. in his hometown of Poughkeepsie, New York.

12. Z.M. brings this suit pursuant to the PA Act 87 of 2019 and the attendant revision of the statute of limitations for sexual abuse that occurred in Pennsylvania.

13. At all times material to the sexual abuse by Garisto, Z.M. was a minor under the age of 18.

## FACTS

14. Plaintiff incorporates the above paragraphs as if fully set forth herein.

Case ID: 220501170

15. Garisto was a Roman Catholic priest and employee and servant of the Archdiocese, who became pastor of St. Peter's Roman Catholic Parish located in Poughkeepsie, New York, prior to 2006.

16. At all times relevant, St. Peter's Roman Catholic Parish was an organized parish sub-entity wholly owned, controlled and organized by Defendant Archdiocese.

17. At all times relevant St. Peter's Roman Catholic Parish conducted business as "St. Peter's Roman Catholic Church" and/or "St. Peter's Roman Catholic Parish."

18. In 2005, after a call to Garisto by(?) Z.M.'s father, Z.M. became involved with the parish and was hired as an altar boy by the parish.

19. This "hiring" of altar boys was different from the arrangement in most parishes in which "altar boys" serve without pay by the parish. Garisto, as pastor, instituted a paid position for Z.M. and other boys of high-school age.

20. Shortly after hiring Z.M., Garisto groomed him to be receptive to his sexual advances by providing Z.M. with money and taking him out for meals.

21. Garisto ingratiated himself with Z.M.'s divorced parents so that they would not suspect any sexual abuse.

22. At this time, Z.M. was undergoing treatment for depression.

23. In late 2006 into 2007, Garisto began to sexually abuse Z.M.

24. At that time, after taking Z.M. for a meal in Poughkeepsie, Garisto parked his car and made sexual advances toward Z.M., including Garisto touching Z.M.'s penis.

25. Over the course of the next few years, Garisto repeated these acts over a dozen times in the Poughkeepsie area.

26. While Garisto continued to abuse Z.M., other parish officials participated in acts to facilitate the abuse.

Case ID: 220501170

27. Garisto owned properties in Philadelphia and Harrisburg, Pennsylvania during the time he abused Z.M.

28. Garisto took Z.M. to these properties on at least six occasions.

29. At this time, Z.M. was between 15 and 17 years old.

30. Garisto sexually abused Z.M. at both the property in Harrisburg and in a vehicle outside of the property on the 1100 block of Palmer Street, in the Fishtown section of Philadelphia, on multiple occasions.

31. Each time the abuse consisted of Garisto touching Z.M.'s penis.

32. Parish employee Fay Dailey, an employee of St. Peter's Parish, a wholly-owned entity of Defendant Archdiocese of New York, knew of the frequent trips taken by Garisto with Z.M. to Pennsylvania and reimbursed Garisto for expenses related to this travel from parish funds.

33. Fay Dailey arranged for accommodations for Z.M. and Garisto on trips to New York City and to Massachusetts.

34. On a trip to Massachusetts, where Garisto was visiting a college, Garisto abused Z.M.

35. Fay Dailey knew that Garisto abused Z.M. and possibly other boys.

36. Z.M. suffered further depression and became addicted to heroin shortly after the abuse by Garisto began in 2006 and 2007.

37. Z.M.'s schoolwork and outside activities high school were significantly negatively impacted by the psychological trauma inflicted by Garisto as a result of his repeated sexual abuse of Z.M.

38. Z.M. eventually sought more psychological treatment and drug addiction counseling.

39. Z.M. attempted suicide on multiple occasions due to the psychological torment, emotional pain, and depression brought on by the abuse by Garisto.

Case ID: 220501170

40. While in treatment for his psychological trauma and drug addiction brought on by the sexual abuse of Garisto, Z.M. revealed the abuse in 2012.

41. Z.M. was too traumatized to report Garisto's crimes to authorities at that time.

42. Z.M. continued to suffer the psychological and emotional impacts of the abuse, but worked to get his life back on track.

43. Z.M. had no contact with Garisto after 2011.

44. In 2019, Z.M. was living in Brooklyn, New York, when he was visited unannounced by Garisto at his home.

45. This visit coincided with the passage of Act 87 of 2019, which changed the statute of limitations for criminal prosecution and civil lawsuits for sexual abuse victims.

46. Under the revised statute, the abuse that Z.M. endured was subject to civil suit for damages in Pennsylvania.

47. During the time frame in which Garisto abused Z.M., he often promised Z.M. that he would transfer his properties in Pennsylvania to Z.M. as a reward for accepting his sexual abuse.

48. Garisto often stated how wealthy he was due to smart investments and indicated that Z.M. would benefit from this wealth if he kept the abuse secret.

49. In 2021, a number of victims came forward to hold Garisto accountable for what he did to them as young boys.

50. In August 2021, Ryan Barry filed a lawsuit in New York state alleging years of sexual abuse by Garisto when Garisto served at St. Joseph's By-the-Sea parish in Staten Island, New York from 1993-1998.

51. As word spread of this claim against Garisto, other victims came forward to report their abuse to authorities.

Case ID: 220501170

52. In January 2022, Garisto was arrested and charged under docket MC-51-CR-0001356-2022 with Endangering the Welfare of Children, Corruption of Minors, and Indecent Assault for abuse of another young boy in the late 1990s and early 2000s in Philadelphia.

53. News of this arrest was publicized by the Philadelphia Inquirer, which spread through the internet.

54. Z.M. learned of this recent arrest of Garisto and made a report to the Philadelphia Police Department.

55. Garisto was again arrested by the Philadelphia Police Department on May 4, 2022 and charged under docket MC-51-CR-7263-2022, and Z.M. is the complainant in this case.

56. Garisto was a serial child sexual predator who was well known to the administration of the Archdiocese of New York.

57. Garisto was previously a member of a different religious order, the Oblates of St. Francis DeSales, and was stationed at various schools in the City of Philadelphia, including the now-closed Northeast Catholic High School.

58. Garisto left that order in the early-to-mid 1980s, and the subject of his departure from the Oblates of St. Francis DeSales is unknown.

59. Upon information and belief, employees and administrators of the Archdiocese of New York had actual knowledge of prior sexual abuse committed by Garisto against minors that occurred before he was assigned to his position of pastor at St. Peter's in Poughkeepsie, New York, where he abused Z.M.

60. The Archdiocese of New York knew or should have known of Garisto's propensity to sexually assault children at numerous times before he was given access to Z.M. at St. Peter's Parish in Poughkeepsie, New York.

## COUNT I – NEGLIGENCE

61. Plaintiff incorporates all prior paragraphs as if set forth at length herein.

62. At all times material, Garisto was an employee and agent working as a priest of the Archdiocese of New York and St. Peter's Parish. Defendant is liable under *respondeat superior*, principles of agency, and vicarious liability for the conduct and acts of Garisto.

63. At all times material, Garisto was acting in the course and scope of his employment and/or agency with the Archdiocese of New York and St. Peter's Parish.

64. Z.M. and his parents reasonably relied on representations from the Archdiocese of New York and St. Peter's Parish and reasonably believed that Garisto was screened and vetted for a prior history of sexual abuse of children.

65. Z.M. and his parents placed their trust in Garisto as he was the pastor of their parish and was an authority figure within the hierarchy of the organization of the Archdiocese of New York.

66. Based on the representations of the Archdiocese of New York, its employees, including staff at St. Peter's Parish, Z.M. and his parents allowed Z.M. to be under the supervision and custody of Garisto in Poughkeepsie and on trips to Pennsylvania, New York City and other locations.

67. No reasonable person would have travelled with Garisto if the history of Garisto's past sexual abuse of children was known.

68. Not only did the Archdiocese know of the abusive history of Garisto, they took steps to shift Garisto from parish to parish and from school to school in different locations within the Archdiocese, all without informing the people of the parishes to which Garisto was re-assigned.

69. At all times relevant, employees of the Defendant Archdiocese of New York concealed thee sexual abuse of children by Garisto in order to hide their own bad faith acts in failing to protect

Case ID: 220501170

children from him, to protect their reputation, and to prevent victims of sexual abuse by him from coming forward.

70. Defendant Archdiocese of New York had a duty to protect Z.M. from foreseeable harm when he was under their supervision and in the care, custody, and control of their employee, Garisto.

71. Defendant Archdiocese of New York had a duty to ensure that Garisto did not use his position within St. Peter's Parish to groom Z.M. for sexual abuse.

72. Defendant Archdiocese of New York had a duty to prevent its employee, Garisto, from traveling to other states with the intent to commit acts of sexual abuse on Z.M.

73. Defendant Archdiocese of New York failed to supervise, train, and monitor Garisto in his role as a priest and employee.

74. Defendant Archdiocese of New York breached its duties to Z.M. by giving Garisto access to minors like him and entrusting Garisto with supervisory duties of Z.M. in his role as an altar boy and minor parish employee.

75. Defendant Archdiocese of New York failed to train parish employees at St. Peter's Parish to report sexual abuse of minor children to authorities.

76. Defendant Archdiocese of New York failed to monitor the activities of Garisto and to create a safe environment for children like Z.M.

77. Defendant's negligence, recklessness, and outrageous conduct through its agents, workmen, workwomen, employees, consisted of the following:

a) Failing to recognize Garisto's sexual abuse of children and the risk this abuse created for other children;

b) Failing to monitor and supervise the activities of Garisto with children, including Plaintiff;

c) Failing to have policies and procedures in place to require supervision and monitoring of Garisto and his interactions and activities involving children;

d) Failing to identify Garisto as a sexual abuser of children;

e) Failing to properly investigate Garisto such that information would have put the Defendant on notice that Garisto sexually abused children;

f) Possessing information but ignoring said information that put Defendant on notice that Garisto sexually abused children;

g) Allowing Garisto to have access to children despite knowledge that Garisto sexually abused children;

h) Continuing to assign Garisto to multiple parishes after receiving information of his sexual abuse of children;

i) Failing to inform members of parishes and mass attendees at those parishes that Garisto was a sexual predator;

j) Failing to properly screen priests for sexual predatory behavior;

k) Failing to use reasonable care under the circumstances; and

l) Other negligent and reckless acts that may be learned from information currently solely in the possession of Defendant.

78. Defendant's negligence as described above was the direct, proximate cause of injuries suffered by Z.M. including, but not limited to:

a) sexual assault;

b) nightmares;

c) mental anguish;

d) suicidal ideation;

Case ID: 220501170

    e) sleeplessness;

    f) depression;

    g) anxiety;

    h) emotional and psychological injuries;

    i) mental strain and stress; and

    j) physical symptoms and sickness related to the above.

  79. As a result of the injuries, Plaintiff Z.M. has required and will require in the future therapy and treatment for the aforesaid injuries, including but not limited to psychiatric and psychological care, physical care, counseling and therapy.

  80. As a result of the injuries, Plaintiff has suffered loss of income and loss of future income and earning capacity.

  81. As a result of the injuries, Plaintiff Z.M. has required and will be required to pay monetary sums in the future therapy and treatment for the aforesaid injuries, including but not limited to psychiatric and psychological care, physical care, counseling and therapy all to his great detriment and loss.

  82. Plaintiff Z.M. was in no way responsible for any of the injuries he suffered as a result of the sexual abuse of Garisto, and his injuries were caused solely by the negligence of the Defendant Archdiocese of New York.

  83. As a result of the injuries described, Plaintiff Z.M. has suffered shame, embarrassment, and loss of life's pleasures.

  84. The negligence of Defendant Archdiocese of New York shocks the conscience of a free society.

Case ID: 220501170

85. The negligence of the Defendant Archdiocese of New York as described above must be punished to send a message to the community that such gross negligence cannot be permitted to continue.

86. Accordingly, the Defendant Archdiocese of New York should be subject to punitive damages to Plaintiff Z.M.

87. Punitive damages are appropriate in order to deter other similarly-situated defendants from acting as Defendant Archdiocese of New York did with respect to its duties and breach of those duties to Plaintiff Z.M.

88. Faced with the choice between preserving the basic dignity of life and the innocence of children or protecting pedophile priests and hiding unconscionable acts done in its name, Defendant Archdiocese of New York chose to ignore the standards of the community and the teachings of Jesus Christ, who reminded his followers of the consequences to the soul of scandal in Matthew 18:1-6. These acts warrant punitive damages.

WHEREFORE, Plaintiff Z.M. respectfully requests that this Court enter judgment in his favor and against Defendant for compensatory and punitive damages together with costs and other relief that this Court deems appropriate in an amount in excess of fifty-thousand dollars ($50,000).

## COUNT II – NEGLIGENT SUPERVISION

89. Plaintiff incorporates all prior paragraphs as if set forth at length herein.

90. At all times material, Garisto was an employee and agent working as a priest of the Archdiocese of New York and St. Peter's Parish.

91. At all times material, Garisto was acting in the course and scope of his employment and/or agency with the Archdiocese of New York and St. Peter's Parish.

Case ID: 220501170

92. At all times relevant, employees of the Defendant Archdiocese of New York concealed their sexual abuse of children by Garisto in order to hide their own bad faith acts in failing to protect children from him, to protect their reputation, and to prevent victims of sexual abuse by him from coming forward.

93. Defendant Archdiocese of New York had a duty to exercise reasonable care to supervise, direct, and control their employees' and agents' work so as not to create an unreasonable risk of harm to minors like Plaintiff Z.M.

94. Defendant Archdiocese of New York's employees and administrators had direct supervisory responsibility for its employee, Garisto, whom it held out in a position of authority at St. Peter's Parish.

95. At all times material, Defendant Archdiocese of New York acted by and through its employees and agents.

96. The negligence of Defendant Archdiocese of New York consisted of among other things:

   a) failing to provide proper instructions to their employees to identify and remove priests from ministry that sexually abused children;

   b) failing to supervise their priests who were involved in youth ministry;

   c) failing to install proper channels for reporting abuse;

   d) failing to implement and/or enforce appropriate safeguards for priests' travel with minors;

   e) failing to properly train parish staff at St. Peter's to recognize and report sexual abuse by Garisto;

   f) failing to provide necessary training and monitoring of any employees or agents to ensure proper supervision of youth;

Case ID: 220501170

g) failing to take proper screening of their employees and priests so as to avoid risk of child sexual abuse by employees and agents of Defendant;

h) failing to formulate, adopt, and enforce rules and procedures to ensure the safety of students and minors in the custody and care of its employees and agents;

i) failing to warn Z.M. and his parents of the risk of harm due to the sexual abuse history of Garisto; and

j) failing to train its employees on the dangers of child sexual abuse.

Defendant did not exercise or use reasonable care and was negligent and/or reckless in selection and retention of Garisto by:

k) failing to investigate of Garisto's history of sexual abuse of children;

l) failing to investigate or ignoring information learned about Garisto's proclivity for sexually abusing children;

m) failing to investigate or ignoring information learned about Garisto's activities in grooming children to be abused;

n) failing to use due care in retaining and assigning Garisto to public priest ministry;

o) failing to remove Garisto from the priesthood after learning of his child rapes;

p) failing to put in practices and procedures to properly monitor the activities of Garisto and other priests related to children;

q) failing to properly supervise Garisto's activities with children;

r) failing to prevent foreseeable harm to children.

97. Defendant's negligence as described above was the direct, proximate cause of injuries suffered by Z.M. including, but not limited to:

   a) sexual assault;

   b) nightmares;

   c) mental anguish;

   d) suicidal ideation;

   e) sleeplessness;

   f) depression;

   g) anxiety;

   h) emotional and psychological injuries;

   i) mental strain and stress; and

   j) physical symptoms and sickness related to the above.

98. As a result of the injuries, Plaintiff Z.M. has required and will require in the future therapy and treatment for the aforesaid injuries, including but not limited to psychiatric and psychological care, physical care, counseling and therapy.

99. As a result of the injuries, Plaintiff has suffered loss of income and loss of future income and earning capacity.

100. As a result of the injuries, Plaintiff Z.M. has required and will be required to pay monetary sums in the future therapy and treatment for the aforesaid injuries, including but not limited to psychiatric and psychological care, physical care, counseling and therapy all to his great detriment and loss.

101. Plaintiff Z.M. was in no way responsible for any of the injuries he suffered as a result of the sexual abuse of Garisto, and his injuries were caused solely by the negligence of the Defendant Archdiocese of New York.

102. As a result of the injuries described, Plaintiff Z.M. has suffered shame, embarrassment, and loss of life's pleasures.

103. The negligence of Defendant Archdiocese of New York shocks the conscience of a free society.

104. The negligence of the Defendant Archdiocese of New York as described above must be punished to send a message to the community that such gross negligence cannot be permitted to continue.

105. Accordingly, the Defendant Archdiocese of New York should be subject to punitive damages to Plaintiff Z.M.

106. Punitive damages are appropriate in order to deter other similarly-situated defendants from acting as Defendant Archdiocese of New York did with respect to its duties and breach of those duties to Plaintiff Z.M.

16

Case ID: 220501170

WHEREFORE, Plaintiff Z.M. respectfully requests that this Court enter judgment in his favor and against Defendant for compensatory and punitive damages together with costs and other relief that this Court deems appropriate in an amount in excess of fifty-thousand dollars ($50,000).

        Respectfully submitted,

        **LAW OFFICE OF JARED S. ZAFRAN, LLC**

BY: _____ *Jared S. Zafran*_____
        Jared S. Zafran, Esquire
        A.J. Thomson, Esquire
        Attorneys for Plaintiff, Z.M.

Case ID: 220501170

**VERIFICATION**

A.J. Thomson, Esquire, states that he is the attorney for Plaintiff, Z.M. and that Z.M.'s identity is known to him.   A.J. Thomson verifies that the statements made in the foregoing Complaint are true and correct to the best of his knowledge, information and belief and that the Plaintiff Z.M. has executed a verification of the facts that will be supplied to counsel for the Defendants and not filed publicly.   The undersigned understands that the statements therein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

/s/ *A.J. Thomson*
Attorney for Plaintiff